**BUCK et al. v. WOOD et al.**

**No. 161.**

District Court, S. D. West Virginia.

Jan. 9, 1942.

I. T. Cohen, of Atlanta, Ga., and Philip Angel, of Charleston, W. Va., for plaintiffs.

W. K. Cowden, Jr., and J. J. N. Quinlan, both of Huntington, W. Va., for defendants.

HARRY E. WATKINS, District Judge.

Plaintiffs have brought this action to recover damages for the unauthorized performance of a musical composition, entitled "You've Got Me This Way" at defendants' dine and dance establishment, "Woodland", near Huntington, W. Va., on February 9, 1941. A jury was waived and the case submitted to the court for decision as to all questions of law and fact.

At a pre-trial conference, all issues of fact were eliminated except the following: (1) Was the musical composition performed by defendants or at defendants' place of business on February 9, 1941? (2) If so, was such composition performed contrary to instructions given to the orchestra by defendants, and without the consent, knowledge and approval of defendants? (3) Was such composition performed by defendants for profit?

During December, 1940, and January, 1941, plaintiffs made repeated efforts to sell defendants a license to play their tunes (commonly called ASCAP compositions) at a small road house on the outskirts of Huntington, W. Va. Defendants repeatedly declined to apply for or purchase this license, while plaintiffs continued to insist that they sign up. Defendants had previously settled a law suit with these same plaintiffs, and say that they had decided not to play ASCAP compositions, because their orchestra leader had told them that there were plenty of popular BMI tunes which they could play without a license.

After failing to sell their license, two ASCAP investigators, James B. Hafley and P. O. Alexander appeared together at Woodland on the night of February 8. They both testified that they were there for about one hour beginning at 11:25 P. M. and that about 12:15 A. M. they heard the musical composition "You've Got Me This Way" played by the orchestra. The orchestra leader, Paul Dunn, called by the defendants, stated that such composition was not played; that he was certain of this fact because his orchestra did not have this particular tune in its library; that he personally called all pieces that were played. He testified that he was instructed by the defendant, Elmer G. Wood, manager, when employed in January, that he was not to play any ASCAP music and he knows that he followed these instructions not only on February 9, but every day that he played during the life of his contract, which expired in July. On cross examination an effort was made to show that the song might have been played, that he might not remember it. Whereupon, Dunn stated that he knew that this tune was not played because from time to time he had several requests to play it, and declined each request because he did not have the music, and for the further reason that he knew it was an ASCAP composition which he had been forbidden to play. He further stated that his orchestra did not know this song, and could not have played it; that they had never even rehearsed it, as was customary to do before trying to play in public.

After qualifying as an expert musician, and present teacher of music, Dunn testified that any person who is familiar only in a general way with popular music could easily be mistaken as to the identity of a tune, especially if it was not played exactly as written. He stated that for all popular music there are only seven tones, and that any popular tune played today, must in many respects, either in harmony or in melody alone, correspond to a similar pattern of melody written many years ago.

Elmer G. Wood and Fannie Wood, the defendants, and Jane Morrow, a waitress, all testified that they were there that night but did not hear the song played. They said that their duties required them to give attention to other matters and therefore they could not state definitely what pieces the orchestra played. The waitress said that she knew the composition when she heard it, and that she had never heard it played at Woodland while she worked there.

The evidence shows that plaintiffs' investigators were mistaken as to some matters that occurred there that night. As to other matters, particularly the amounts of minimum or cover charges paid, they do not agree among themselves. While it is not absolutely necessary that one be a musician to identify popular music, neither of plaintiffs' witnesses were musicians. Both sat at the farthest possible point from the orchestra, and relied upon their ear for music to identify the composition. They did not make any effort to look at the sheet music, and do not know whether the orchestra played this particular selection from music or by ear. The witness, Hafley, was not present at the trial, now being an employe of the Federal Bureau of Investigation, but his deposition was read. The Court had an opportunity to see and observe all other witnesses upon the questions at issue. After such observations, and after hearing the evidence, and again reading it after it was transcribed, I am of opinion that the plaintiffs have failed to prove the performance of the composition by a preponderance of the evidence. I was impressed with the evidence of Paul Dunn, his demeanor, and his clear and understandable reasons for knowing that the two investigators were mistaken in their identity of the music played.

Having decided the first issue of fact in favor of the defendants, the other questions become immaterial and it is not necessary to decide either of them. Judgment for the defendants.